UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **PATRICIA A. HAMILTON** | |
| **Plaintiff,** | **CASE NO.:** 1:06-CV-821 |
| vs. | **JUDGE:** DLOTT |
| | **MAGISTRATE JUDGE:** BLACK |
| **THE SHEPHERD CHEMICAL COMPANY LONG-TERM DISABILITY PLAN,** *et al.* | |
| **Defendants.** | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER
MOTION FOR THE AWARD OF BENEFITS**

**I.  Introduction**

Now comes the Plaintiff, Patricia A. Hamilton, and hereby replies to the Defendant's opposition to her ERISA disability benefits because the medical and vocational evidence is compelling and the Defendant abused its discretion in denying her disability benefits.

The Defendants are Shepherd Chemical Company Long-Term Disability Plan and Union Security Insurance Company, which goes by the trade name Assurant [herein "Assurant"]. Assurant denied Hamilton benefits based upon a form that it failed to produce during the appeal process that was at the end of the Administrative Record out of sequence with all of the other chronologically arranged documents. Assurant's rationale for the termination of benefits is the thinnest of reeds. It ignores the subsequent rebuttal by the same physician, Dr. Sterneberg. Assurant attacks, with an improper post hoc rationale, that Hamilton is not disabled by chemical sensitivities although there is no medical evidence in the paper reviews of any of Assurant's experts to support this. Finally, Assurant rationalizes

its failure to review the documents Hamilton presented in review stating that it had no obligation to do so when in fact, a Sixth Circuit decision published the day after Assurant submitted its briefs roundly rebuffs Assurant's position.

## II. Claim Termination Without Medical Evidence

Assurant makes several comments that are not quite understandable. It states that, ". . . Hamilton instead has concentrated her efforts on an attempt to redact the Administrative Record of all the evidence proving that she was capable of performing the material duties of her occupation (and those of her job) on November 5, 2004." This is not true. The basis of the termination, from the Defendant's own records, is a comment by Hamilton that she thought her doctor would allow her to go back to work. This is in the Administrative Record at 67 where the Claims Adjuster recorded that Mrs. Hamilton thought the doctor was going to allow her to go back to work and Adjuster Eller wrote, "I will pay through 11/3/04 & close out her claim." Assurant's response brief so jumbles and misstates the chronology of events when Hamilton's claim was denied that Hamilton attaches a time line of key events, their dates, and the supporting reference in the records for these events. (Exhibit 1).

Whether an individual is capable of returning to work is a combination of medical limitations and vocational/occupational demands. Assurant's only justification for termination of Hamilton's benefits is a nearly unreadable form that was dated October 13, 2004 in which Dr. Sterneberg "estimates" that Hamilton may be able to return to work on November 5, 2004. However, this same form indicates that Hamilton cannot do prolonged standing, when Hamilton's occupation requires standing six hours a day. (AR 1257). Assurant selectively picks this "guesstimate" by the doctor about the return to work date to

justify termination, and ignores the fact that this same doctor, Dr. Sterneberg, later stated that Hamilton would be able to sit no more than fifteen minutes and able to stand or walk for only fifteen minutes at a time. (AR 285-287). Sterneberg furthermore said that Hamilton was unable to work for forty hours because of moderately severe pain and that her pain and medical conditions or medications would cause lapses in concentration. (AR 285-287).

All this evidence of Dr. Sterneberg was submitted on appeal. All of it was ignored during the appeal, depriving Hamilton of a full and fair hearing.

Assurant accuses Hamilton of challenging "that USIC's [Assurant's] determination that Hamilton could perform the material duties of her occupation after November 4, 2004 based on Dr. Sterneberg's contemporaneous [in reality estimated] release of Hamilton to return to work on November 5, 2004 is irrational."

### III. Irrationality Is Not the Standard

Irrationality is not the standard of review. The same form estimating a date of return also stated that Ms. Hamilton could do no sustained standing. The employer, Shepherd Chemical Company's, own determination of the physical requirements of Ms. Hamilton Shepherd submitted shows that she must stand six hours out of eight. (AR 1238). Even under the arbitrary and capricious standard, the decision whether the denial can be sustained is based upon whether the decision "is the result of a deliberate, principled reasoning process and is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). The Court must review the quality and quantity of medical evidence. *Glenn v. MetLife*, 461 F.3d 660; 2006 FED App. 0336P (6th Cir.). The decision will only be upheld if there is a "deliberate,

principled and reasoned decision." *Elliott v. Metro Life Ins. Co.*, 473 F.3d 613; 2007 FED App. 0013P (6th Cir.). Although Assurant believes that this Court should be reviewing this to determine whether it is "irrational," that is not the standard of review. Assurant repeatedly falls short of the standard of a "deliberate, principled reasoning process supported by substantial evidence."

## IV. Dr. Sterneberg's Subsequent Information Denied

What is most egregious is that on appeal, all of Dr. Sterneberg's materials were ignored. They were not reviewed by the reviewer. Neither were Dr. Blatman's, Dr. Bernstein's, nor Mr. Cody's materials. Sterneberg submitted materials on appeal that demonstrated that the decision to terminate benefits based upon his estimated return to work date was incorrect.

Dr. Sterneberg diagnosed the fibromyalgia, osteoarthritis of both arms, tenosynovitis of the left and right hip, bilateral shoulders with impingements. Dr. Sterneberg stated that she would be able to sit zero hours out of an eight-hour day with sitting limited to fifteen minutes. He thought that she was unable to stand or walk for more than fifteen minutes at a time. His determination of her lifting was similar. He found that the applicant, Patricia Hamilton, would need approximately two hours of bed rest a day. Dr. Sterneberg stated that she would be unable to work forty hours because she has moderately severe pain; the pain and medical condition or medications would cause lapses in concentration. These lapses would be daily for several hours. He also found that she had severe environmental limitations. Dr. Sterneberg stated that she would not be able to work on a constant schedule, requiring at least four absences during a month and that her absences could be expected to be two weeks per month or fourteen days per month. Dr. Sterneberg

4

commented that the patient has significant osteoarthritis that flared. (AR 285-287).

V.   **Assurant's Continuing Misstatements of Fact**

There are several mistakes of fact in Assurant's reply brief. There is a statement that Hamilton's employer offered to accommodate "certain physical aspects of her job." This is incorrect. Hamilton's employer was adamant that she could not return to work because of exposure to chemicals. (AR 222). Furthermore, the policy definition of disability does not encompass the ability to return to your Own Occupation with accommodations. This is an element of the law for the Americans with Disabilities Act. It is not relevant to the Plan language. It is an attempt to provide a level of legitimacy to Assurant's actions. Shepherd Chemical would not take her back. This is not surprising, after Shepherd forced Hamilton to file a worker's compensation claim. Assurant was so interested in dumping this claim onto some other responsible party that it failed to do a thorough investigation.

There are several other distortions of fact that should be addressed. Assurant accuses Hamilton of an unfair attack on their ". . . full and fair review of her claim because the Appeal Committee did not discuss new evidence submitted to [Assurant] on final appeal in its October 26, 2006 final denial letter." Unfortunately for Assurant who filed this matter on January 24, 2008, the day before the Sixth Circuit in *Bennett v. Kemper Nat'l Servs.*, 2008 U.S. App. LEXIS 1252, 14-15 (6th Cir. 2008) in a published decision completely contradicted Assurant's position merely mentioning documents is not a full and fair review of the appeal materials. The Court stated:

> In the final determination letter mere mention of the evidence is not the same as a discussion about why the administrator reached a different conclusion and is not adequate consideration. We "f[ou]nd the word 'discussed' is somewhat misleading; 'mentioned' would be a more accurate choice."

> *Glenn,* 461 F.3d at 671 n.3. . . . We finally register our serious concern that the final denial letter fails to explain the reasons for its decision.  The three-page letter uses approximately one page to explain the standard for own-occupation disability.  The next page simply lists the approximately ninety documents which were included in the review of Bennett's claim.  The actual explanation of the decision-making process employed simply states that Broadspire did not believe that the submitted documents contained "sufficient medical evidence . . . to substantiate a significant functional impairment that would prevent Bennett from performing the essential functions of any occupation." . . . . . . This reads like a conclusion, not a "deliberate, principled reasoning process . . . supported by substantial evidence." *Glenn*, 461 F.3d at 666. Accordingly, we hold that Broadspire's determination cannot withstand scrutiny under the "arbitrary or capricious" standard of review.

On appeal, Assurant did nothing but list documents omitting Dr. Sterneberg's evaluation form.  No evaluation of Hamilton's doctors' opinions was done.  Assurant fails the *Bennett* test.

Now, while still ignoring all of the orthopedic conditions that Hamilton has, Assurant states baldly that Hamilton was not disabled by chemical sensitivity.  In the paper record review done by Maikrantz on behalf of Assurant, Maikrantz admits that she is incompetent to address these issues.  Maikrantz is an internal medicine physician.  (AR 264).  Dr. Neubauer's review is on medical and nervous conditions, none of which Hamilton was diagnosed with.  Maikrantz stated, "Restrictive environment as outlined by Dr. Bernstein is not established as being medically necessary in the record as a whole."  This statement is meaningless, and is not substantive medical evidence.  Dr. Crossley also was confused and not competent.  Now, after failing to get an industrial hygienist, occupational specialist, or immunologist to review Hamilton's situation, we now are subjected to defense counsel's own interpretation.  Assurant did not do any IME of Hamilton.  Assurant reviewing

6

Hamilton's occupational chemical sensitivities and inability to be exposed to them is Counsel's speculation. Page six of Assurant's brief is a lay opinion of what the records mean. It constitutes an improper, post hoc rationale. It is also a selective review, analyzing the chemical sensitivity without consideration of her other limitations.

**VI.     Selective Review Is Forbidden**

As stated above, Hamilton's medical conditions are complicated and the limitations multifaceted. The selective review of each one of these conditions on their own without looking at their overall effect on her ability to perform has been strongly criticized and forbidden. In the Sixth Circuit in *Spangler v. Lockheed-Martin Energy Systems*, 313 F.3d 356, 362 (6th Cir. 2002), in a similar type of situation, a reviewing physician ignored treating physicians, relying on various slivers of information taken out of context without an explanation of how these contradicted the overall medical limitations of the claimant. This is not the deliberate, principled review required under the arbitrary and capricious standard. See *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir. 2005). The Sixth Circuit, along with all other circuits, has repeatedly condemned selective review stating it was not the deliberate, principled review on substantial medical evidence that was required. The Court in *Moon* said "the hallmark of a reasoned explanation is not the selective picking and choosing to reverse engineer a diagnosis." A reasoned explanation must be "consistent with the quality and quantity of the medical evidence." Again, in *Glenn v. MetLife*, 461 F.3d 660, 2006 FED App. 0336P (6th Cir.), the Court again criticized selective review, taking matters out of context to support a denial. It is a form of the logical fallacy "reductio ad absurdum." This is deconstruction so each part is rationalized as insignificant, whereas the ability to perform an occupation encompasses both physical and mental abilities.

This "selective review" is precisely the tactic that Assurant has taken attempting to deconstruct each one of the physical limitations and the occupational limitations to the point where it is meaningless and ignore the combined effects of Hamilton's medical limitations.

**VII.** **Occupation must Be Relevant to Actual Requirements**

Assurant states that Ms. Hamilton's position as a Chemical Technician is light duty, yet even Assurant's own vocational experts rate it as medium duty.  She lacks the physical capacity to perform even light duty occupations.

The Defendant Assurant again misstates the results of its own Functional Capacity Evaluation ("FCE").  Even the Functional Capacity Evaluation (AR 782) conclusion states that she is unable to meet the demands of constant standing and walking in her job.  The FCE noted that she had constant exposure to chemicals that was a central function of her job, but it was concluded to be outside the scope of the FCE. (AR 782).  The Defendant, in its reliance on "accommodation," points to page 87.  This is apparently a telephone conversation, not substantial evidence, stating "I asked if accommodations could be made. She said they will make any physical accm.  It is the chemical exposure.  Ph. sent list of chemicals for review but AP never responded back.  Ins. does smoke.[1]  They can't accommodate exposure to chemicals."  The necessary physical accommodations were not communicated to the employer, therefore, the response agreeing is suspect.

The other document upon which Assurant relies is not evidence at all, but the letter of August 10, 2005 where Dana Eller states that, "Your employer did advise that reasonable

---

[1] The record shows Hamilton stopped smoking many years ago.

8

accommodations can be made in regard to this and other job duties." Obviously this is not a candid representation of the record. Shepherd, the employer, was not informed of what the "accommodations" would be, including the physical, in this phone conversation. Not all the information was made available to the employer. Nonetheless, the employer refused to accommodate the chemical exposure.

There is a twisting of the FCE report stating that it found that Hamilton could sit constantly and could stand and walk between 2.5 and 5.5 hours in each given day. (AR 784). There is a check in the boxes immediately to the right on the same page of the FCE. Reviewers checked the boxes that indicate Hamilton could not do her occupational requirements of standing and walking. Assurant relies on the FCE as support. In reality the FCE proves Ms. Hamilton could <u>not do</u> her occupation.

**VIII. <u>Hamilton's Appeal Materials Must Be Reviewed</u>**

Assurant argues on page 11 of its brief that, "The medical and vocational information Hamilton submitted on her second appeal dealt with assessments of Hamilton's self-reported capacity in June 2006, not November 2004, as required by the Policy and controlling precedent." This, once again, is inaccurate. The orthopedic disabilities are fully documented. Dr. Sterneberg was treating her in November of 2004. There is no factual basis for this allegation; nothing is referenced. Alleging the medical information on appeal is old is disingenuous. Assurant set up a two-level appeal process. This guarantees that the second appeal information will be later in time. This is another post hoc rationale. It was not raised in the denial. This Court should not adopt post hoc rationales. *University Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839 (6th Cir. 2000).

**IX.     Paper Reviews Are Inadequate**

Defendant Assurant states that "USIC reasonably credited the opinions of Drs. Crossley and Maikrantz over the opinion of Hamilton's treating physicians, none of whom ever opined that she was disabled on November 5, 2004." Nowhere is there an explanation of why the paper reviews were preferred. This is error. Both Crossley and Maikrantz's opinions were dealt with earlier. Maikrantz relied mostly upon the physical therapist, and then misinterpreted the FCE results. Crossley did not understand the chemical sensitivities issue, and did not look at all of the medical conditions Hamilton had. However, in the final analysis, these paper reviews are inadequate. First, there was never any statement in the final denial as to why the Defendant Assurant "reasonably credited the opinions" of these paper reviewers. This is required for the denial to be a reasonable, principled decision.

The insurance policy [Plan] permits an Independent Medical Examination ("IME") under "**Right to Examine or Interview**," "We may ask you to be examined as often as we require at any time we choose. We may require you to be interviewed by our authorized representative. **We will pay third-party charges for any Independent Medical Exam or interview which we require. If you fail to attend or fully participate, we will not pay the benefits**." (AR 586). Recently, the Sixth Circuit in *Bennett v. Kemper Nat'l Servs.*, 2008 U.S. App. LEXIS 1252, 17-18; 2008 FED App. 0041P (6th Cir.) stated:

> Although "we find nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination," *Calvert*, 409 F.3d at 296, "a plan's decision to conduct a file-only review--'especially where the right to [conduct a physical examination] is specifically reserved in the plan--may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination.'"

10

> [*18] *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006) (alteration in original) (quoting *Calvert,* 409 F.3d at 295). In *Calvert*, we were unable to credit the conclusions reached in the file review when the reviewer based his conclusion that the Plaintiff was not disabled on adverse credibility determinations and when the reviewer's conclusion stood in direct conflict with objective medical data in the record. *Calvert*, 409 F.3d at 296-97.

Maikrantz and Crossley were not qualified for Hamilton's conditions. This violated the regulations of the DOL for claimant review. An appropriate medical professional or specialist must be used for the appeal review. Maikrantz and Crossley were before the appeal. The required qualified medical professional review was not done at the appeal level. 29 C.F.R. § 2569.503-1(h)(3)(iii).

## X. <u>November 5, 2004 Date Is Irrelevant</u>

The Defendant repeatedly states that November 5, 2004 is a "critical date." It states that "Hamilton has been unable to show that she was disabled past that date and her treating physicians' information on appeal were all related to 2006 instead of 2004." This is, again, a misstatement of fact. The only thing that is critical about this date is that it is when Dr. Sterneberg estimated that Hamilton might be able to go back to work and Assurant seized on this and discontinued payment while ignoring Sterneberg's notations on the same page that Hamilton could not stand for any extended periods. Obviously, this date is critical only in Assurant's own mind because there was nothing in the record that supports this termination. See Exhibit 1. Dr. Bernstein wrote prior to this date that she could not be around chemicals. Dr. Sterneberg, in his appeal documents, clearly states that she was unable to work during these periods, and he treated her during all this time. This "critical date" was never raised during the appeal denial by Assurant as a reason. The denial

11

letters did not ask Ms. Hamilton to provide Assurant with information based on this "critical date" of November 5, 2004. There was nothing in the final denial that stated that the information was too late and did not address this November 5, 2004 date. This is defense counsel's rationalization to give credence to what is otherwise a sloppy, inadequate review of the medical records - - - another forbidden post hoc rationale. The Defendant's Counsel continues to invent reasons not in the denial letters and not contained in the Administrative Record. These are improper attempts to influence the Court by inventing new reasons that it uses to provide a platform of rationale for what is otherwise a denial that lacks substantive medical evidence, a denial in which the appeal evidence was not reviewed, a denial in which none of the materials sent by Hamilton were analyzed, thereby violating its statutory obligation to provide her with a full and fair review on appeal.

**XI.     Remand Is Inappropriate**

Recent decisions of the Sixth Circuit ordered the payment of benefits and did not remand the matter back for the administrator to determine whether to pay. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157 (6th Cir. 2007), *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 291 (6th Cir. 2005); *Glenn v. MetLife*, 461 F.3d 660, 674 (6th Cir. 2006). The concept of remanding back to the administrator has no basis in the statute. It is, in fact, an unconstitutional denial of Ms. Hamilton's right of an Article III judge to make the benefits determination as previously briefed. This Court should make a decision to award benefits and order it.

Respectfully submitted,

By: */s/ Robert Armand Perez, Sr.*
Robert Armand Perez, Sr. (OH #0009713)
THE PEREZ LAW FIRM COMPANY, L.P.A.
7672 Montgomery Road, #378
Cincinnati, OH 45236-4204
Telephone: (513) 891-8777
Facsimile: (513) 891-0317
E-mail: rperez@cinci.rr.com
**TRIAL ATTORNEY FOR PLAINTIFF,
PATRICIA A. HAMILTON**

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2008 a copy of the foregoing Plaintiff's Reply Brief in Support of Her Motion for the Award of Benefits was filed electronically and will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

Angelina N. Jackson, Esq. (0077937)
DINSMORE & SHOHL, LLP
225 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Telephone: (513) 977-8688
Facsimile: (513) 977-8141
E-mail: angelina.jackson@dinslaw.com
**TRIAL ATTORNEY FOR DEFENDANT,
UNION SECURITY INSURANCE COMPANY**

S. Russell Headrick, Esq.
Leigh M. Chiles, Esq.
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue
2000 First Tennessee Building
Memphis, TN 38103
Telephone: (901) 526-2000
Facsimile: (901) 526-2303
E-mail: rheadrick@bakersonelson.com
E-mail: lchiles@bakerdonelson.com
**OF COUNSEL FOR DEFENDANT,
UNION SECURITY INSURANCE COMPANY**

By: */s/ Robert Armand Perez, Sr.*
**TRIAL ATTORNEY FOR PLAINTIFF,
PATRICIA A. HAMILTON**